UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
LESLIE-ANN BENJAMIN,                         <u>MEMORANDUM & ORDER</u>
                                             07-CV-2487 (KAM)(LB)
                    Plaintiff,

        -against-

HEALTH AND HOSPITALS CORPORATION, and
KINGS COUNTY HOSPITAL CENTER ADMIN.,
Dept. of Behavioral Health,

                    Defendants.
----------------------------------X
**KIYO A. MATSUMOTO, UNITED STATES DISTRICT JUDGE:**

        *Pro se* plaintiff Leslie-Ann Benjamin ("plaintiff") is

a former patient care associate who worked for defendants Health

and Hospitals Corporation ("HHC") and Kings County Hospital

Center ("KCHC") in the KCHC Department of Behavioral Health

until her termination on February 20, 2006.  Plaintiff filed the

instant action on June 14, 2006, alleging that defendants

discriminated against her on the basis of her age, gender,

national origin, religion, and disability in violation of Title

VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*

("Title VII"), the Age Discrimination in Employment Act, 29

U.S.C. §§ 621 *et seq.* ("ADEA"), and Americans with Disabilities

Act of 1990, 42 U.S.C. §§ 12112 *et seq.* ("ADA").  The complaint

also asserts claims of retaliation and can be construed as

asserting various supplemental state-law claims.

1

The parties have concluded discovery and defendants now move for summary judgment asserting that: (i) the complaint is barred, in part, by the applicable statutes of limitation; (ii) the court lacks jurisdiction over plaintiff's workers' compensation, Title VII, and ADEA claims; (iii) plaintiff failed to establish a prima facie claim under the ADEA; (iv) plaintiff failed to establish a triable issue of fact with respect to her ADA and Title VII claims; and (v) plaintiff failed to establish a prima facie claim of retaliation. (*See* Defendant's Motion for Summary Judgment ("Def. Mot."), Doc. Entry No. 40.) Plaintiff opposes the motion it its entirety. (*See* Plaintiff's Opposition ("Pl. Opp."), Doc. Entry No. 47.)

## BACKGROUND

The following facts are undisputed unless otherwise noted.[1] Plaintiff identifies herself as a permanently disabled female of West Indian national origin and of Muslim religious faith. *(See* Defendant's Local Rule 56.1 Statement of Undisputed Material Facts ("Def. 56.1") ¶ 1.) Plaintiff is a former

---

[1]     Despite being served with notice to do so (*see* Notice to Pro Se Litigant Opposing Motion for Summary Judgment, attached as Exhibit 2 to the Reply Declaration of Larry R. Martinez in Support of Defendants' Motion for Summary Judgment), plaintiff has not submitted a counterstatement of material facts, as required by Local Civil Rule 56.1. Defendants ask the court to deem admitted all facts contained in their Statement of Material Facts ("Rule 56.1 Statement"). Given plaintiff's *pro se* status, the court will deem admitted only those facts in the defendants' Rule 56.1 Statement that are supported and verified by admissible evidence in the record and not controverted by other admissible evidence in the record. *See Newman v. Zenk*, 05-CV-759 (ARR), 2007 U.S. Dist. Lexis 98179, at *2 (E.D.N.Y. Mar. 27, 2007) (quoting *Jessamy v. City of New Rochelle,* 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003).

2

nurse's aide, who was employed by defendants from 1989 to 2006. The details of her employment history and the allegations giving rise to this action are set forth in detail below.

## I.    Plaintiff's Employment History

Plaintiff was hired as a nurse's aide at HHC's KCHC on August 21, 1989. (*See* Def. 56.1 ¶ 2; Plaintiff's Employment Records, attached as Exhibit C to the Declaration of Larry R. Martinez in Support of Defendants' Motion for Summary Judgment ("Martinez Decl.")[2] at 47, 78-80.) Plaintiff transferred to HHC's Cumberland Diagnostic and Treatment Center on November 30, 1992. (*See* Def. 56.1 ¶ 3; Martinez Decl. Ex. C at 5.) In August 2000, plaintiff returned to KCHC as a patient care associate in the Department of Maternal Child Services. (*See* Def. 56.1 ¶ 4; Martinez Decl. Ex. C at 186.) Plaintiff then transferred to KCHC's Department of Behavioral Health as a patient care associate, where she worked from August 2000 until her termination. (*See* Def. 56.1 ¶¶ 5-6.)

Plaintiff's position with the Department of Behavioral Health entailed providing assistance to mentally and physically disabled patients. (*See id.* ¶ 9.) Her duties included: positioning patients using patient lifting devices, if

---

[2]      The court notes that defendants marked the pages of their exhibits with Bates Numbers. All citations herein to defense exhibits will refer to the Bates Numbers rather than the original page numbers of the various documents (some of which are illegible) without the Bates identifying prefix.

necessary; restraining patients; monitoring restrained patients; maintaining, assembling, and dismantling patient care equipment; and conducting observations of patients with respect to their mental states and social behaviors. (*See id.*)

During her tenure with defendants, plaintiff filed seven workers' compensation claims and took ten medical leaves of absence. (*See* Plaintiff's Workers' Compensation Claim Applications, attached as Exhibits to the Martinez Decl., Def. Ex. E at 469-495; Def. Ex. G at 255-257, 259; Def. Ex. H at 1-18.) The details of these claims and her various leaves of absence will be discussed only to the extent that they provide context or are relevant to plaintiff's claims of discrimination and retaliation.

On August 20, 2001, while out on her fifth medical leave, plaintiff filed a discrimination complaint against defendants with the New York State Division of Human Rights ("DHR") alleging violations of Title VII and New York State Human Rights Law ("NYSHRL"). (*See* Plaintiff's First DHR Complaint and Related Documents, attached as Exhibit P to the Martinez Decl. at 1-3). In particular, she claimed that defendants discriminated against her on the basis of her: (1) age (35 years old); (2) national origin (West Indian); (3) sex (female); and (4) creed (Seventh Day Adventist). (*Id.* at 1-3.)

In support of her complaint, plaintiff alleged that Dina Greer, a nurse and co-worker, had harassed her, assaulted her, and "threatened [her] with a needle which had AIDS on it." (*Id.* at 1.) Additionally, plaintiff alleged that unidentified coworkers made derogatory comments to her about her national origin, including calling her a "coconut." (*Id.* at 3.) Plaintiff stated that she complained to management and that "nothing had been done to correct the situation." (*Id.* at 1.) She asserted that she was injured on the job due to negligence and that, upon her return to work from medical leave for that injury, her supervisors assigned her physically demanding tasks. (*Id.* at 2.) She claimed that defendants failed to timely pay her and often modified her work schedule without notifying her. (*Id.* at 3.)

On May 1, 2002, after a year-long investigation, the DHR concluded that there was "no probable cause" to believe plaintiff's allegations. (*Id.* at 4-6.) There is nothing in the record to suggest that plaintiff pursued these allegations any further, by seeking review or filing additional complaints with city, state or federal agencies, or by filing an action in state or federal court.

On July 1, 2002, while out on another medical leave, plaintiff filed a second discrimination complaint with the DHR

against defendants. (*See* Plaintiff's Second DHR Complaint and Related Documents, attached as Exhibit P to the Martinez Decl. at 7-9.) Plaintiff claimed that defendants discriminated against her on the basis of her creed (for being Muslim[3]). She alleged that coworker Dina Greer referred to her as a "fake Muslim." (*Id.* at 8.) She also claimed that defendants retaliated against her for filing her first DHR discrimination complaint, by suspending her without pay.[4] (*Id.*)

On September 14, 2004, upon completing a two-year investigation, the DHR found "no probable cause" and dismissed plaintiff's second discrimination complaint. (*Id*. at 10-12.) On November 5, 2004, the United States Equal Employment Opportunity Commission ("EEOC") adopted the DHR's findings and issued plaintiff a right-to-sue letter. (*Id.* at 13.) The letter explained that:

> [y]ou may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. **Your lawsuit must be filed <u>WITHIN 90 DAYS</u> of your receipt of this Notice,** or your right to sue based on this charge will be lost.

---

[3]     At the time she filed her second complaint with the DHR, plaintiff identified herself as Muslim. (*See* Def. Ex. P at 7.)
[4]     The facts and circumstances surrounding this suspension are discussed in greater detail below.

(*Id.*)  There is nothing in the record to suggest that plaintiff

pursued these allegations any further, by filing an action in

state or federal court.

On May 6, 2002, Sharon Grosvenor, plaintiff's direct

supervisor, learned of plaintiff's intent to permit two police

officers of the New York City Police Department ("NYPD") entry

into a secured patient unit to assist her in serving legal

notices on coworkers.  Grosvenor informed plaintiff that HHC

policy prohibited the service of legal notices by any officers

other than HHC police officers and that, if plaintiff persisted,

she would be subject to disciplinary measures.  (*See* May 7, 2002

KCHC Administrative Report, attached as Exhibit M to the

Martinez Decl. at 8-9.)  Nonetheless, plaintiff escorted two

armed NYPD officers into a restricted patient care unit at the

KCHC Department of Behavioral Health to serve mediation notices

on her coworkers.  (*See id.* at 8-11.)  Upon learning of this

incident, Trevor Spencer, the Unit Administrator of the KCHC

Department of Behavioral Health Unit, questioned plaintiff.

Plaintiff told him that Grosvenor gave the officers permission

to enter the secured patient unit.  (*Id.* at 332.)  Spencer then

spoke with Grosvenor who denied granting access to the NYPD

officers and indicated that she had warned plaintiff that such

access violated HHC policy.  Spencer then informed plaintiff of

his intent to take corrective action against her.  (*See id.*)

Plaintiff received a Notice and Statement of Charges on May 9, 2002, informing her of disciplinary proceedings that HHC intended to take against her for the May 2002 incident. (*Id.* at 322-24.)  Plaintiff was suspended from May 8, 2002 until her disciplinary hearing on May 22, 2002.[5]

On May 22, 2002, plaintiff appeared before Denise Johnson Green, a Hearing Officer, for a "Step 1A" disciplinary hearing to address the incident, pursuant to § 7.5.3 of HHC's Personnel Rules and Regulations ("HHC Rules & Regs.")[6]. (*See* Def. 56.1 ¶¶ 50-51.)  Upon consideration of the evidence presented, Green found that there was sufficient evidence to support a finding that plaintiff violated HHC policy and compromised patient safety. (*See* Def. Ex. M at 331-336.)  Green recommended a 20-day unpaid suspension. (*See id.*)  Plaintiff appealed Green's recommendation to the New York City Office of Administrative Trials and Hearings ("OATH"), pursuant to HHC Rules & Regs. § 7.5.7. (*See id.* at 338-346.)  On February 28, 2003, Suzanne P. Christen, the presiding OATH Hearing Officer, issued a report and recommendation affirming Green's finding of a violation and imposition of a penalty of suspension. (*See id.*)  On April 7, 2003, Stephen Small-Warner, HHC's Associate

---

[5]    During her suspension, plaintiff sought and received authorization for another medical leave.  She went out of work on medical leave from May 24, 2002 until December 3, 2002. (*See* Def. 56.1 ¶ 56.)
[6]    All HHC Rules & Regs. discussed herein are attached as Exhibit N to the Martinez Decl.

Executive Director of Human Resources, suspended plaintiff without pay from April 21, 2003 until May 16, 2003. (*See id*. at 337.)

Plaintiff then appealed her suspension to the HHC Personnel Review Board ("PRB"). (*See id*. at 94.) On October 29, 2003, the PRB convened a hearing. At the hearing, plaintiff conceded her guilt but challenged the penalty as being disproportionate to the offense. (*See id*. at 95-96.) On March 3, 2004, the PRB affirmed the penalty. (*See id*. at 96.)

On June 9, 2005, while plaintiff was out on her tenth medical leave, she met with Maxine Bispham, the Principal Administrative Associate of HHC's Workers' Compensation Unit, to discuss her benefits. (*See* Def. 56.1 ¶ 68.) On June 16, 2006, plaintiff filed a police report with the HHC Police alleging that during her meeting with Bispham she was physically assaulted by Green (the Labor Relations Specialist who presided over plaintiff's 2002 Step 1A hearing); Samantha Ellis (another HHC Labor Relations Specialist); and Phil Romaine (HHC's Associate Director of Labor Relations). (*See* Plaintiff's Criminal Complaints and Related Documents, attached as Exhibit O to the Martinez Decl. at 1-2, 6-8, 17-23.) Plaintiff also filed a police report suggesting that unidentified KCHC employees had thrown a brick through a window in her home. (*See id*. at 1-2.)

HHC conducted an investigation into plaintiff's allegations which, ultimately, resulted in HHC's filing of new disciplinary charges against plaintiff. HHC issued plaintiff a Notice and Statement of Charges on July 20, 2005. (*See id.* at 3-5.) On August 10, 2005, HHC convened a disciplinary conference to address the charges. (*See id.* at 6.) Several HHC employees, who were working in the vicinity of Bispham's office on June 9, 2005, the day of the meeting, testified that no assault by Green, Ellis or Romaine occurred. (*See id.* at 7.) On August 19, 2005, the Conference Officer concluded that plaintiff was "guilty of misrepresenting the circumstances surrounding her eagerness to collect workers' compensation." (*Id.* at 8.) The Hearing Officer recommended a penalty of termination. (*Id.*)

On January 23, 2005, plaintiff's union challenged the termination recommendation at a Step II informal conference. (*See id.* 9-12.) On January 28, 2006, the Conference Officer issued a Step II decision denying plaintiff's grievance and affirming the finding of guilt and the recommended penalty -- termination. (*Id.* at 12.) On February 17, 2006, HHC terminated plaintiff effective February 20, 2006 for violations of HHC Rules and Regs. as specified by the Conference Officer. (*See* Def. Ex. C at 308.) After termination, plaintiff pursued

internal appeals; however, she was unable to obtain reinstatement.[7]

At the time of her termination, plaintiff was out of work on her tenth medical leave of absence, which had begun on January 14, 2005. (*See* Def. Ex. H at 18.)  On January 23, 2006, Phil Romain, HHC's Associate Director of Labor Relations, informed plaintiff by letter that, unless plaintiff provided medical documentation detailing her ability to perform the duties required as a patient care associate, her position could be terminated pursuant to Section 71 of the New York State Civil Service Law ("Section 71").[8]  At the time of this letter, her leave of absence had exceeded that allowed by law. (*See* Def. Ex. D at 304.)  The letter informed plaintiff that if she failed to present evidence of her ability to return to work or if she failed to respond to the letter, she would be terminated pursuant to Section 71. (*See id.*)  Notably, plaintiff's medical records from January 2006 to October 2007 (which she submitted to HHC) indicate that plaintiff was unable to use public

---

[7]    On May 30, 2006, HHC convened a Step III hearing, at the request of plaintiff's union. (*See* Def. Ex. O at 13.)  On June 27, 2006, the Reviewing Officer issued a Step III decision affirming the findings of guilt and the penalty of termination. (*Id.*)  On July 24, 2006, plaintiff's union filed a Request for Arbitration at the New York City Office of Collective Bargaining. (*See id.* at 14-16.)  HHC withdrew two of the five charges of misconduct prior to the hearing. (*See id.* at 22.)  Nonetheless, the arbitrator affirmed the finding of guilt and the penalty of termination with respect to the remaining charges. (*See id.* at 23.)

[8]    Section 71 permits employers to terminate New York civil servants who are unable to work for more than one year.  *See* N.Y. Civ. Serv. L. § 71.

transportation due to her back condition; unable to lift or carry anything; unable to stand more than 5-10 minutes; unable to sit more than 5-10 minutes; and "unable to return to any gainful employment."  (*See* Plaintiff's Medical Records, attached as Exhibit L to the Martinez Decl. at 151-153, 306-307, 310.) On February 28, 2006, HHC terminated plaintiff pursuant to Section 71.  (*See* Def. Ex. H at 18.)

## II.  The Instant Action

On June 10, 2006, plaintiff contacted the EEOC and filed an intake questionnaire alleging that defendants had discriminated against her on the basis of her (i) national origin (West Indian), (ii) gender (female), (iii) religion (Muslim), and (iv) disability.  (*See* Plaintiff's EEOC Intake Questionnaire and Related Documents, attached as Exhibit B to the Martinez Decl. at 1-7.)  Plaintiff also asserted a claim of retaliation for "having complained about discrimination."  (*Id.*) On May 16, 2007, the EEOC issued plaintiff a letter noting that "the information provided indicates that the charge is subject to:  The Americans with Disabilities Act (ADA)."  (*Id.* at 11.) The letter did not acknowledge receipt of any Title VII claims and there is no explanation in the record or the parties' submissions for this exclusion.  (*Id.*)

On May 16, 2007, the EEOC informed KCHC by letter that plaintiff had filed discrimination and retaliation claims under the ADA. The letter omitted mention of claims of discrimination on the basis of plaintiff's gender, religion, or national origin. (Def. 56.1 ¶¶ 120-121.) On June 7, 2007, the EEOC informed plaintiff by letter that it had dismissed her ADA claims. (*See* Def. Ex. B at 10-12.) The EEOC issued plaintiff a right-to-sue letter on June 7, 2007 indicating that her case was closed as her "allegation did not involve a disability as defined by the Americans with Disabilities Act." (*Id.* at 12.)

On June 14, 2007, plaintiff, *pro se*, commenced the instant action against HHC and KCHC. (*See* Complaint, Doc. Entry No. 1.) She then filed an amended complaint on November 15, 2007. (*See* Am. Compl., Doc. Entry No. 18.) Plaintiff alleges that she was retaliated against and terminated on the basis of her gender, religion, national origin, age, and disability status in violation of Title VII, the ADEA, and the ADA. (*Id.* at 1-3.) In particular, plaintiff asserts that defendants engaged in the following discriminatory practices: termination of employment, failure to accommodate her disability, unequal terms of employment, retaliation, and "suspensions and assaults while on duty." (*Id.* at 3.) With respect to her disability, plaintiff indicated that she has undergone several surgeries to her right knee and back. (*Id.* at 4.)

Plaintiff attached voluminous documents to the amended complaint including records related to plaintiff's various workers' compensation claims (Am. Compl. at 29, 31-34, 44-48, 50, 54-55, 60, 68-69, 81, 104, 107-08, 113, 130, 158-163, 165-71, 232-40, 246, 259, 317-18, 320-29), records related to her various EEOC complaints (*Id*. at 100-03, 126, 260-70, 287-90, 293-99, 301-04), unspecified medical records (*Id*. at 119, 256-57), correspondences related to disciplinary measures taken against her (*Id*. at 131, 132-57, 172-231, 240-45, 248, 258, 272-86, 291-92), and incident reports and other unrelated grievances and complaints (*Id*. at 105-06, 109-11, 114-18, 127-28, 247, 249, 315).  These documents can be construed as raising the following pendent or state-law claims:  (i) breach of contract, (ii) defamation, and (iii) unspecified claims with respect to workers' compensation.

## **SUMMARY JUDGMENT STANDARD**

A court may grant summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party carries the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986). In deciding a motion for summary judgment, the court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court must construe the facts in the light most favorable to the nonmoving party and all reasonable inferences and ambiguities must be resolved against the moving party. *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 83 (2d Cir. 2001).

Nevertheless, the nonmoving party cannot rest on "mere allegations or denials" but must instead "set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also National Westminster Bank USA v. Ross*, 676 F. Supp. 48, 51 (S.D.N.Y. 1987) ("Speculation, conclusory allegations, and mere denials are not enough to raise genuine issues of fact."); *Harlen Assocs. v. Incorporated Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) ("[M]ere speculation and conjecture [are] insufficient to preclude the granting of the motion.").

Nor can the nonmoving party rest solely on the pleadings. *Celotex*, 477 U.S. at 324 (explaining that Rule 56(e) "requires the nonmoving party to go beyond the pleadings"); *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). Instead, each statement of material fact by the movant or opponent must

be followed by citation to evidence which would be admissible,
as required by Rule 56(e) and Local Civil Rule 56.1(d).
Moreover, "the mere existence of some alleged factual dispute
between the parties will not defeat an otherwise properly
supported motion for summary judgment; the requirement is that
there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S.
at 247-48 (emphasis in original). No genuine issue of material
fact exists "unless there is sufficient evidence favoring the
nonmoving party for a jury to return a verdict for that party.
If the evidence is merely colorable, . . . or is not
significantly probative, . . . summary judgment may be granted."
Id. at 249-50 (internal citations omitted).

## DISCUSSION

**I.   Timeliness**

Plaintiff alleges discrimination claims against
defendants under Title VII, the ADEA, and the ADA. (*Id*. at 1-
3.) In New York, an aggrieved employee wishing to bring a claim
in federal district court under Title VII, the ADEA, or the ADA
must file a complaint with the EEOC within 300 days of the
alleged discriminatory conduct. *See Petrosino v. Bell Atlantic*,
385 F.3d 210, 219 (2d Cir. 2004); *Tewksbury v. Ottaway News.*,
192 F.3d 322, 325-27 (2d Cir. 1999). Claims that accrued more
than 300 days prior to a plaintiff's filing of an EEOC complaint

are time-barred as this statutory requirement is analogous to a statute of limitations. *See, e.g.*, *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998) (explaining that "discriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in district court"). An action accrues when a plaintiff has notice of the allegedly discriminatory conduct. *See, e.g.*, *Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996) ("The timeliness of a discrimination claim is to be measured from the date the claimant had notice of the allegedly discriminatory action."). In this circuit, equitable tolling is applicable only in "rare and exceptional circumstances," for example, if an "employee was actively misled by his [or her] employer" or "prevented in some extraordinary way from exercising his [or her] rights." *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 112 (2d Cir. 2008).

In the instant action, plaintiff filed a complaint with the EEOC on June 10, 2006. Under the 300-day statute of limitations, any claims premised upon conduct that occurred prior to August 14, 2005 is time-barred. Accordingly, plaintiff's claims premised on the following acts are time-barred: (1) plaintiff's August 20, 2001 DHR complaint, (2) the 2002 disciplinary charges defendants filed against plaintiff for admitting two armed NYPD officers into a secure patient care

unit, (3) plaintiff's July 1, 2002 DHR complaint,[9] and (4) any
ADA claims based upon alleged injuries plaintiff sustained
between May 23, 1994 through August 14, 2005. *See Kassner v.
2nd Ave. Deli. Inc.,* 496 F.3d 229, 239 (2d Cir. 2007) (affirming
dismissal of plaintiff's ADEA claim as time-barred); *Zant*, 80
F.3d at 713-14 (affirming dismissal of Title VII claims as time-
barred); *Davison v. New York City Transit Auth.*, 07-CV-3225
(DLI)(LB), 2008 WL 3334078, at *1 (E.D.N.Y. Aug. 8, 2008)
(dismissing plaintiff's Title VII, ADEA, and ADA claims as
untimely as the alleged discriminatory conduct occurred five
years prior to plaintiff filing an EEOC complaint).  Moreover,
plaintiff presented no evidence that would justify equitable
tolling of the statutes of limitation. *See Paneccasio*, 532 F.3d
at 112 (finding plaintiff's claim untimely and concluding that
plaintiff failed to adduce any evidence that he was misled by
his employer).

    Under the relevant statutes of limitation, the only
claims that remain are claims premised on:  (1) plaintiff's
disciplinary termination on February 20, 2006, for filing two
false police reports and making other unfounded complaints

---

[9]    With respect to the claims raised in this DHR complaint, plaintiff
received a right-to-sue letter from the EEOC on November 4, 2004. (*See* Def.
Ex. P at 13.)  There is nothing in the record to suggest that plaintiff has
ever filed a federal action to adjudicate these claims.  Accordingly, to the
extent that the complaint can be construed  as asserting these claims, they
are also barred as plaintiff was required to file a federal action asserting
them within 90 days of receiving the right-to-sue letter, which she failed to
do. *See* 42 U.S.C. § 2000e-5(f)(1).

against co-workers, and (2) plaintiff's termination on February 28, 2006, pursuant to New York Civil Service Law § 71, for exhausting a one-year medical leave of absence.

## II. Plaintiff's Workers' Compensation-Related Retaliation Claim

To the extent that the complaint can be construed as raising a retaliation claim under the A.D.A. for retaliation against plaintiff for filing her workers' compensation claims, the court lacks jurisdiction to resolve this claim. A litigant seeking to raise such a claim is provided with a cause of action and an exclusive remedy to be adjudicated by the Workers' Compensation Board, as set forth in New York Workers' Compensation Law. *See* N.Y. Workers' Comp. Law § 120. Indeed, "[t]here is no cause of action for such claims in the federal district court." *Ridgeway v. Metropolitan Museum of Art*, 06-CV-5055 (SAS), 2007 WL 1098737, at *4 (S.D.N.Y. Apr. 10, 2007) (dismissing plaintiff's A.D.A. claim premised on defendant's retaliation against him for filing a workers' compensation claim); *Williams v. Brooklyn Union Gas Co.*, 819 F. Supp. 214, 230-31 (E.D.N.Y. 1993) (granting summary judgment in defendant's favor on a retaliatory discharge claim premised on plaintiff's filing of a workers' compensation claim). Accordingly, to the extent that plaintiff's ADA retaliation claim is premised on retaliation against her for filing workers' compensation claims,

this claim lacks merit.  The court grants summary judgment in defendants' favor on this claim.

## III. Plaintiff's ADEA Claim

Under the ADEA, it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age."  29 U.S.C. § 623(a)(1).  "The class protected by this statutory prohibition is limited to persons 40 years of age or older." *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005).  To establish a *prima facie* case of age discrimination under the ADEA a plaintiff must demonstrate that:  "(i) at the relevant time the plaintiff was a member of the protected class; (ii) the plaintiff was qualified for the job; (iii) the plaintiff suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination, such as the fact that the plaintiff was replaced by someone 'substantially younger'"  *Id.* (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996)).

Turning to the instant action, plaintiff cannot establish the first element of a *prima facie* claim under the ADEA –– that she was a member of the protected class at the time of the alleged retaliatory terminations.  Plaintiff was born on

August 11, 1966 and defendants terminated her in February 2006.
It is undisputed that at the time of these terminations,
plaintiff was not protected by the ADEA as she was seven months
shy of age forty.  Accordingly, the court grants defendants
summary judgment with respect to plaintiff's ADEA claims.

## IV.  Plaintiff's Title VII and ADA Discrimination Claims

To establish a *prima facie* claim of discrimination
under either Title VII or the ADA, a plaintiff must establish,
*inter alia*, that she was able to perform the essential duties of
her job.  *See Heyman v. Queens Village Comm. for Mental Health
for Jamaica Cmty. Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d
Cir. 1999) ("To establish a prima facie case of discrimination
under the ADA, plaintiff must show by a preponderance of the
evidence that (1) his employer is subject to the ADA; (2) he was
disabled within the meaning of the ADA; (3) he was otherwise
qualified to perform the essential functions of his job, with or
without reasonable accommodation; and (4) he suffered adverse
employment action because of his disability."); *Dawson v. Bumble
& Bumble*, 398 F.3d 211, 216 (2d Cir. 2005) ("[A] plaintiff must
first establish a prima facie case of discrimination [under
Title VII] by showing that (1) he is a member of a protected
class; (2) he is competent to perform the job or is performing
his duties satisfactorily; (3) he suffered an adverse employment

decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class."). A plaintiff is qualified for or competent to perform a job "if she is able to perform the essential functions of that job, either with or without a reasonable accommodation." *See Shannon v. New York City Trans. Auth.,* 332 F.3d 95, 99 (2d Cir. 2003).

In the instant action, plaintiff worked as a patient care associate, which involved providing physical assistance to mentally and physically disabled patients. Among other duties, this job required her to lift and position patients, restrain patients, and to maintain, assemble, and dismantle patient care equipment. *See* Def. Ex. D, at 91-94.

In the year before her termination, plaintiff was out of work on a medical leave of absence and filed numerous documents with the New York State Workers' Compensation Board asserting that she was partially disabled from performing her regular duties with respect to a back injury. (*See* Def. Ex. I at 47-50.) Additionally, she alleged a "total disability" with respect to an injury involving her right knee. (*See id*. at 47.)

During her medical leave she filed an application for disability benefits with the Social Security Administration (the

"Administration").  In April 2005, the Administration rejected

her application, concluding that, although plaintiff was unable

to perform her job as a nurse's aide, she could perform

"sedentary" work.  (*See* Explanation of Determination and Related

Documents, attached as Exhibit J to the Martinez Decl. J at 268-

70.)  In particular, the Administration noted that:

> We realize that at present you are unable to
> perform certain kinds of work.  But based on
> your age of 38 years, education of 14 years,
> and your experience, you can perform
> sedentary work (for example, you could lift
> a maximum of 10 lbs., and walk and stand
> occasionally in carrying out your job
> duties).

(*Id.* at 268.)  Plaintiff's position as a primary care associate

was anything but sedentary.  Her position involved the routine

lifting and positioning of patients as well as transporting and

assembling medical equipment.  Further, plaintiff failed to

provide any explanation as to the contradictory nature of filing

claims with the Workers' Compensation Board and the

Administration, in which she asserted total disability, and

filing an ADA claim before this court, which by its nature,

includes an assertion that she was able to perform the essential

duties of her position.  *See Cleveland v. Policy Mgt. Sys.

Corp.*, 526 U.S. 795, 806 (1999) ("[A] plaintiff's sworn

assertion in an application for disability benefits that she is,

for example, 'unable to work' will appear to negate an essential

element of her ADA case –- at least if she does not offer a sufficient explanation.  For that reason, we hold that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim.  Rather, she must proffer a sufficient explanation.").

Finally, as early as January 2006, records from plaintiff's treating physicians indicated that plaintiff was unable to use public transportation, lift or carry anything, stand more than 10-15 minutes, and sit more than 5-10 minutes. (*See* Def. Ex. L at 151-53, 306-07, 310.)  In fact, her physician noted that she was "unable to return to any gainful employment." (*Id.* at 153.)

It is undisputed that plaintiff could not perform her essential duties at the time of her terminations as she was "unable to return to any gainful employment."  Accordingly, plaintiff has failed to establish her *prima facie* claims for discrimination under Title VII and the ADA.  *See Shannon*, 332 F.3d at 99 (affirming grant of summary judgment in defendant's favor as a color blind plaintiff was unable to establish that he was able to perform his duties as a bus driver); *see also Plourde v. Paulson*, 06-CV-3133, 236 Fed. Appx. 656, 657 (2d Cir. 2007) (affirming grant of summary judgment in defendant's favor as plaintiff, who was unable to work more than four hours each

day, was unable to establish, among other things, that she was qualified to perform the essential duties of her position, which required an eight-hour shift).

## IV. Plaintiff's Other Retaliation Claims

To establish a *prima facie* claim of retaliation, a plaintiff must demonstrate (i) participation in a protected activity, (ii) knowledge by her employer of such activity, (iii) that the plaintiff suffered a materially adverse action, and (iv) that there is a causal connection between the protected activity and the materially adverse action. *See Richardson v. Comm.*, 532 F.3d 114, 123 (2d Cir. 2008) (discussing the elements of a Title VII retaliation claim); *Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161, 177 (2d Cir. 2006) (discussing the elements of an ADA retaliation claim); *Kessler v. Westchester County Dept. of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006) (discussing the elements of an ADEA retaliation claim).

A plaintiff can establish causation: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of other employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. New York City Bd. of Ed.*, 232 F.3d 111,

117 (2d Cir. 2000). "[A] close temporal relationship between a plaintiff's participation in a protected activity and an employer's adverse actions can be sufficient to establish causation." *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002) (citing *Cifra v. General Electric Co.*, 252 F.3d 205, 217 (2d Cir. 2001)). However, to establish causation through temporal proximity, the intervening period must be "very close." *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

The court construes the complaint, its attachments, and plaintiff's opposition papers as asserting that plaintiff engaged in the following alleged protected activity: (i) filing Workers' Compensation claims from 1994 to 2005,[10] (ii) filing an EEOC complaint in June 2006, (iii) filing DHR complaints in 2001 and 2002, and (iv) filing two false police reports in 2005. As set forth above, the only materially adverse actions that remain before this court are plaintiff's 2006 terminations on two grounds for the false assault report and pursuant to § 71 of New York Civil Service Law for inability to work for more than one year.

On the undisputed evidence in this case, plaintiff cannot establish a causal connection between any of the protected activities and the terminations. The filing of an

---

[10] As set forth above, the court lacks jurisdiction to entertain this claim.

EEOC complaint in June 2006 is not causally related to her earlier terminations in February 2006. As a matter of law, there is no causal relationship between protected activity that occurs after a materially adverse event. *See, e.g.*, *Diaz v. Weill Med. Coll.*, 02-CV-7380, 2004 WL 285947, at *21 (S.D.N.Y. Feb. 13, 2004) (dismissing plaintiff's retaliation claim for failure to establish a *prima facie* claim as there is no causal connection between a negative performance review and an EEOC complaint filed two weeks later). Plaintiff's alleged protected activity -- filing an EEOC complaint in June 2006 -- occurred four months after her termination and, therefore, is not causally related to her terminations.

The other alleged protected activities -- the filing of her Workers' Compensation claims from 1994 to 2005, the filing of her DHR complaints in 2001 and 2002, and the filing of two false police reports in 2005 -- are too distant in time from her terminations in February 2006 to be considered causally related to them. *See Breeden*, 532 U.S. at 273 (indicating that "[a]ction taken (as here) 20 months later suggests, by itself, no causality at all"); *Hollander v. Am. Cyanimid Co.*, 895 F.2d 80, 84-86 (2d Cir. 1990) (holding that three and a half months between the protected activity and the adverse action is insufficient to establish causation); *see also Chang v. Safe Horizons*, 05-CV-6760, 254 Fed. Appx. 838, 839 (2d Cir. 2007)

("[Plaintiff's] termination occurred almost one year after her complaint of discrimination, thus undermining any causal nexus based on temporal proximity.").

Accordingly, on the evidence submitted, plaintiff failed to establish a triable issue of fact with respect to the causation element of her retaliation claim. The court grants summary judgment in defendants' favor on plaintiff's Title VII and ADA retaliation claims.

## V.    Plaintiff's Motion to Amend the Complaint

The court construes plaintiff's opposition as including a request for leave to amend her complaint to raise new claims. Her opposition cites to numerous statutes and can be construed as raising new theories of discrimination arising under (i) the National Labor Relation Act ("NLRA"), 28 U.S.C. §§ 151, *et seq.*, (ii) the Occupational Safety and Health Act ("OSHA"), as amended, 29 U.S.C. §§ 651, *et seq.*, and (iii) the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq.* (*See* Pl. Opp. at 8-16.)

The court denies plaintiff's motion for leave to amend as the asserted amendments would be futile. First, the court lacks subject matter to entertain plaintiff's NLRA claims, as the National Labor Relations Board has exclusive jurisdiction over such claims. *See Sullivan v. American Airlines, Inc.,* 424

F.3d 267, 277 (2d Cir. 2005) (quoting *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 245 (1959)).  Second, employees lack standing to raise claims under the OSHA in federal courts.  *See, e.g.*, *Donovan v. Occupational Safety & Health Rev. Comm.*, 713 F.2d 918, 926-28 (2d Cir. 1983).  Finally, plaintiff has presented no evidence of interference with or retaliation for plaintiff's alleged exercise of her rights under the FMLA, which is required to establish retaliation under the FMLA.  *See Potenza v. City of New York*, 365 F.3d 165, 167-68 (2d Cir. 2004) (affirming grant of summary judgment in employer's favor on a retaliation claim under the FMLA).  Accordingly, plaintiff's motion for leave to amend the complaint is denied as amendment would be futile.  The court declines to address the timeliness of plaintiff's motion for leave to amend and whether such a motion is properly before the court under Rule 15(a) of the Federal Rules of Civil Procedure.

## VI.  Plaintiff's Supplemental State-Law Claims

Neither of the parties discussed plaintiff's supplemental state-law claims for breach of contract and defamation.  The court declines to retain jurisdiction to resolve these claims as there are no remaining federal claims before this court.  *See Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008) (explaining that "it is within the

district court's discretion to decline to exercise supplemental jurisdiction over the pendent state-law claims").

## CONCLUSION

For the foregoing reasons, the court grants summary judgment in defendants' favor on each of plaintiff's claims. The court denies plaintiff's motion for leave to amend the complaint to add new claims. This action is hereby dismissed.


**SO ORDERED.**
Dated:      Brooklyn, New York
            September 11, 2009

                          _____/s/_____
                          **KIYO A. MATSUMOTO**
                          United States District Judge
                          Eastern District of New York